# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

LISA HENSLEY,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 16-cv-2265 DMS (KSC)

**ORDER (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND (2) GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

On August 8, 2012, Plaintiff Lisa Hensley filed an application for disability income benefits, alleging a disability onset date of January 30, 2012. (Administrative Record ("AR") at 9, 77.) Plaintiff alleged she was disabled due to fibromyalgia and muscle spasms. (*Id.* at 77.) Plaintiff's claim was denied initially and upon reconsideration, after which she requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 97–100, 106–10, 112–13.) ALJ Peter J. Valentino held a hearing on March 19, 2015. (*Id.* at 21–75.) Attorney David Shore represented Plaintiff at the hearing. (*Id.*) The ALJ heard testimony from Plaintiff, medical expert Charles Cooke, M.D., and vocational expert Connie Guillory. (*Id.*) On April 28, 2015, the ALJ issued a written decision, finding Plaintiff not disabled. (*Id.* at 9–16.) Plaintiff filed a request for review of that decision, which the Appeals

Council denied on August 4, 2016. (*Id.* at 1–3.) Plaintiff filed the present case on September 7, 2016.

Plaintiff now moves for reversal or remand of Defendant Commissioner of Social Security's decision to deny her benefits. Defendant opposes Plaintiff's motion and cross-moves for summary judgment. For the reasons discussed below, the Court denies Plaintiff's motion for summary judgment and grants Defendant's cross-motion for summary judgment.

## I.

## BACKGROUND

Plaintiff is a 57 year old female with past relevant work experience as a registered nurse. (AR at 76, 94.) She developed pain syndrome in 2003 or 2004, as a result of a virus. (*Id.* at 299.) Plaintiff's pain syndrome has been diagnosed as fibromyalgia, and she has been seeing John Qian, M.D., her pain management doctor, for treatment. (*Id.* 31–32, 399.)

As relevant to the present case, Plaintiff saw Dr. Qian on July 31, 2012. (AR 392.) Plaintiff complained of moderate to severe fibromyalgia pains and severe muscle spasms. (*Id.*) After a physical examination, Dr. Qian noted that Plaintiff "is alert and orientated[,]" and "[s]he is in no acute distress." (*Id.* at 393.) Dr. Qian recommended that Plaintiff continue the current medical regimen, which included morphine sulfate, xanax, trazodone, neurontin, and baclofen. (*Id.*) Subsequently on August 27, 2012, Plaintiff saw Dr. Qian for a follow-up visit. (*Id.* at 390.) Dr. Qian noted Plaintiff's pain was manageable with current medication and recommended Plaintiff to continue the current medical regime. (*Id.* at 391.)

On October 29, 2012 and November 26, 2012, Plaintiff returned to Dr. Qian. (AR at 378, 374.) Plaintiff complained that "she continues to struggle with chronic pain" and described her current pain as 7 on a scale of 0 to 10. (*Id.*) Dr. Qian, however, noted that Plaintiff's pain has been manageable with medication, and

therefore, recommended Plaintiff to continue the current medication regime. (*Id.* at 378–79, 374–75.)

On December 3, 2012, Plaintiff saw Thomas J. Sabourin, M.D. for a consultative orthopaedic evaluation. (AR at 299.) Plaintiff complained of pain in the neck, shoulders, elbows, wrists, hands, upper back, lower back, hips, knees, ankles, and feet. (*Id.*) Dr. Sabourin conducted a physical examination and noted that Plaintiff had a normal gait, normal range of motion of her cervical spine and lumbar spine with pain throughout the range of motion, negative straight leg raise, and full range of motion of the upper and lower extremities with some diffuse tenderness. (*Id.* at 300–01.) Dr. Sabourin diagnosed Plaintiff with generalized pain syndrome of an undetermined etiology, and concluded that Plaintiff does not have any orthopedic restrictions. (*Id.* at 301.)

On December 24, 2012, Plaintiff saw Dr. Qian and reported that she continues to have moderate to severe fibromyalgia related pains. (AR at 366.) Dr. Qian again recommended that Plaintiff continue the current medication regime because her pain was manageable with medications. (*Id.* at 366–37.) Plaintiff returned to Dr. Qian for follow-up visits in January 2013 through January 2015. (*Id*. at 318, 321, 324, 338, 342, 346, 350, 356, 361, 397, 400, 403, 406, 409, 412, 415, 418, 421.) In the progress reports documenting theses visits, Dr. Qian noted that Plaintiff continued to report moderate to severe fibromyalgia related pains, but nevertheless, opined that Plaintiff's pain was manageable with medications.

During Plaintiff's most recent visit to Dr. Qian on February 18, 2015, Plaintiff reported that she "is able to manage pain w[ith] the current regimen…. [and is] doing fine with pain management." (*Id.* at 394.) Dr. Qian noted that Plaintiff had 18/18 positive trigger points, but she was otherwise alert and oriented, not in acute distress, and "functioning at baseline." (*Id.* at 395.) Dr. Qian again recommended Plaintiff to continue the current medication regimen. (*Id.* at 395.)

## II.

## DISCUSSION

Plaintiff raises two arguments in her motion for summary judgment. First, Plaintiff argues the ALJ improperly rejected her subjective complaints regarding the severity of her symptoms. Second, Plaintiff asserts the ALJ failed to properly consider the opinions of her treating physicians. Defendant disputes there was anything improper about the ALJ's analysis, and urges the Court to affirm the Commissioner's decision denying Plaintiff's request for benefits.

**A.  Legal Standard**

Under the Social Security Act, "disability" is defined as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 423(d)(1)(A). The impairment must be so severe that the claimant "is not only unable to do his previous work but cannot ... engage in any other kind of substantial gainful work." 42 U.S.C. § 423(d)(2)(A). In addition, the impairment must result "from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory techniques." 42 U.S.C. § 423(d)(3).

A court cannot set aside a denial of benefits unless the Commissioner's findings are based upon legal error or are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986); *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Orteza v. Shalala*, 50 F.3d 748,

749 (9th Cir. 1995). It is more than a scintilla, but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975).

To determine whether substantial evidence exists to support the ALJ's decision, a court reviews the record as a whole, not just the evidence supporting the decision of the ALJ. *Walker v. Matthews*, 546 F.2d 814, 818 (9th Cir. 1976). A court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). In short, a court must weigh the evidence that supports the Commissioner's conclusions and that which does not. *Martinez*, 807 F.2d at 772.

If there is substantial evidence to support the decision of the ALJ, the decision must be upheld even when there is evidence on the other side, *Hall v. Secretary*, 602 F.2d 1372, 1374 (9th Cir. 1979), and even when the evidence is susceptible to more than one rational interpretation. *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). If supported by substantial evidence, the findings of the Commissioner as to any fact will be conclusive. 42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981).

**B.     Plaintiff's Testimony**

The ALJ is required to make "a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)). To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, "'the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Vasquez v. Astrue*, 572 F.3d

586, 591 (9th Cir. 2009)). If the claimant satisfies this first step, "and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

Here, the ALJ found Plaintiff met the first step. (AR at 12) ("After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms [.]"). The ALJ, however, found that Plaintiff did not meet the second step because her "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely credible for the reasons explained in this decision." (*Id.*) Plaintiff argues the ALJ did not set forth a clear and convincing reason for rejecting her complaints of subjective symptoms. Specifically, Plaintiff argues the ALJ discredited her subjective complaints solely on the basis that it was not supported by objective medical evidence. Defendant contends Plaintiff largely ignore other bases for the ALJ's credibility determination in discounting Plaintiff's subjective complaints. Defendant further argues the ALJ's credibility assessment was proper and is supported by substantial evidence in the record.

The record shows the ALJ did not discredit Plaintiff's subjective complaints solely based on the fact that it was not corroborated by objective medical evidence. As Defendant correctly points out, the ALJ also offered other reasons for rejecting Plaintiff's subjective complaints. For example, the ALJ did not find Plaintiff's allegations credible due to the inconsistency between Plaintiff's subjective complaints and her daily activities. *See Molina*, 674 F.3d at ("In evaluating the claimant's testimony, the ALJ may use ordinary techniques of credibility

– 6 –

evaluation…. For instance, the ALJ may consider ... whether the claimant engages in daily activities inconsistent with the alleged symptoms.") (internal citations and quotations omitted).  The ALJ stated that Plaintiff "prepared meals, did cleaning, laundry and light yard work, drove a care [sic], shopped in stores, socialized with friends and family in person and by phone, had lunch with friends, took a train to visit her sister, and went to the shopping mall on a regular basis[.]" (*Id.* at 13.)  The ALJ found that Plaintiff "has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations."  (AR at 13.)  The Court finds that the ALJ made "specific findings" relating to whether Plaintiff's daily activities contradict her allegations of subjective symptoms.  *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Plaintiff, however, states "[t]here is simply no evidence of record to establish that plaintiff could engage in such activities absent an opportunity to rest or take medication."  (Opp'n to Cross-Mot. for Sum. Jdg. at 3.)  But the record contains function reports filled out by Plaintiff and her husband that show Plaintiff prepared simple meals, did light gardening, and socialized with friends and family in person or by phone on a daily basis.  (*Id.* at 13, 191–92, 203, 205.)  The reports also indicate Plaintiff went to local restaurants, shopping malls, movie theaters, and veterinarian's and doctor's offices on a regular basis.  (*Id.* at 205.)  Moreover, Plaintiff did the laundry and light housework, and shopped for groceries and household items once or twice per week.  (*Id.* at 191, 193, 203–04.)  Therefore, the ALJ's finding of the inconsistency between Plaintiff's subjective complaints and daily activities is supported by substantial evidence in the record.

Moreover, the ALJ found Plaintiff's subjective complaints lacked credibility due to inconsistency between her testimony at the hearing and her prior statements.  At the hearing, Plaintiff testified she "was terminated after being on medical leave of absence from January 2012,… they terminated me due to the fact that I had no

date of return from my medical leave of absence." (AR at 26.) The ALJ did not find Plaintiff credible because "[t]here is evidence that the claimant stopped working for reasons not related to the allegedly disabling impairments." (AR at 13.) The ALJ stated, "There is some evidence the claimant stopped working for 'personal issues.'" (*Id*.) Indeed, Dr. Darryl Adderson's[1] medical notes from May 17, 2012 show Plaintiff spoke to him regarding "work situation" and informed him there was "too much animosity at work." (*Id*. at 273.) The July 4, 2013 letter from Liberty Mutual Insurance to Dr. Qian states that "[he] informed [Liberty Mutual Insurance] that it was personal issues at the claimant's prior job which led to her cessation of work." (*Id*. at 336.) Moreover, Dr. Adderson's medical notes from April 1, 2014 indicate Plaintiff informed him that she "lleft [sic] work for personal reasons[.]" (*Id.* at 482.)

Plaintiff contends "[h]er reason for stopping work at the time she did has no bearing regarding her impairments or her credibility." (Opp'n to Cross-Mot. for Sum. Jdg. at 4.) Contrary to Plaintiff's contention, in assessing Plaintiff's credibility, the ALJ was not precluded from considering the fact that Plaintiff left work for reasons other than her disability. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ properly found claimant's alleged disability not credible based in part on the fact that the claimant left work for economic rather than medical reasons); *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992) (pain testimony properly rejected because claimant was laid off from work for reasons unrelated to her pain); *Back v. Colvin*, 653 F. App'x 550, 552 (9th Cir. 2016) ("some record evidence suggested that family pressures and concerns about parenting—as opposed to debilitating pain—motivated Back to leave full-time employment."). Therefore, in weighing Plaintiff's credibility, the ALJ properly considered inconsistencies between her testimony and her statements in the record.

---

[1] Dr. Darryl Adderson was Plaintiff's general treating physician. (AR at 32.)

The inconsistencies between Plaintiff's allegations and her daily activities and prior statements in the record were clear and convincing reasons for discounting her claims of disabling symptoms. Because the ALJ's findings are supported by substantial evidence, this Court may not engage in second-guessing. *See Thomas*, 278 F.3d at 959. Accordingly, the ALJ properly discounted Plaintiff's testimony based on specific credibility findings that are properly supported by the record.

### C.  Treating Physician Opinion

Plaintiff argues the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Adderson and Dr. Qian's opinions. To evaluate this claim, the Court must look to the law governing the evaluation of physician opinions in disability cases.

The Ninth Circuit case law and Social Security Administration regulations distinguish among the opinions of three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester*, 81 F.3d at 830–31; 20 C.F.R. § 416.927. Generally, greater weight will be given to an opinion of a treating physician than a nontreating physician. *Id*. In turn, the opinion of an examining physician is entitled to greater weight than a nonexamining physician. *Id.*

As a general matter, a "treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (citing Social Security Ruling (SSR) 96–2p). Where the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830. If the opinion of a treating physician is contradicted, the ALJ may reject that opinion provided "specific and legitimate reasons" are given

which are supported by substantial record evidence. *Id.* The ALJ can satisfy this latter burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751.

Initially, Plaintiff's argument that the ALJ disregarded Dr. Adderson's opinion lacks merit, because Dr. Adderson did not provide an opinion regarding Plaintiff's functional limitations. *See Champagne v. Colvin*, 582 Fed. App'x 696, 697 (9th Cir. 2014) ("[claimant's] contention that the ALJ disregarded his treaters' opinions about his limitations lacks merit, because none of the treating providers gave an opinion regarding his functional limitations."). Therefore, the ALJ did not err in disregarding Dr. Adderson's opinion.

Plaintiff also argues the ALJ improperly rejected Dr. Qian's opinion without citing legal justification. The record, however, indicates the ALJ gave two specific and legitimate reasons for giving little weight to Dr. Qian's opinion. The first reason was that Dr. Qian's opinion was inconsistent with his treatment records. A discrepancy between a doctor's opinion and his clinical notes constitutes a valid reason to not rely on the doctor's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *see also Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir.2003) (ALJ properly rejected treating physician's opinion where it was contradicted by treatment notes); *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (conflict between treatment notes and treating physician's opinions constitutes a valid reason to discredit the physician's opinion). Dr. Qian's opinion indicated that "claimant's fibromyalgia and chronic pain and related symptoms make her unable to complete an 8 hour workday with significant limitations in sitting, standing, walking, lifting and carrying and performing postural and manipulative movements, and her ability to persist at tasks." (AR at 15.) Nevertheless, the ALJ explained that "Dr. Qian's own progress notes showing no significant and persistent deficits in strength,

sensation or mobility, as well as that the claimant presented in no acute distress and was alert and oriented does not support his opinions (Exhibits 4F, 6F, 7F)." (*Id.*) Indeed, "[a]lthough claimant consistently reported significant pain, Dr. Qian's progress notes throughout frequently indicate the claimant's pain was manageable or tolerable with medications, [and] that she was independent for her activities of daily living[.]" (*Id.* at 12.) Therefore, the ALJ's determination that Dr. Qian's opinion was inconsistent with his treatment notes was a specific and legitimate reason supported by substantial evidence in the record to discount his opinions.

The second reason the ALJ listed for giving little weight to Dr. Qian's opinion was that his opinion premised on Plaintiff's subjective complaints, which the ALJ had already properly discounted. The ALJ explained, "It also appears Dr. Qian's opinion is based in large part on the claimant's subjective complaints of pain which are not fully credible for the reasons indicated herein." (*Id.*) The Ninth Circuit has explained that rejection of a treating physician's opinion constitutes a specific and legitimate reason when the opinion is premised on a claimant's own subjective complaints that the ALJ had properly discredited. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). Therefore, this reason articulated by the ALJ was also sufficiently specific and legitimate to discount Dr. Qian's opinion. Accordingly, the Court finds the ALJ did not err in assigning little weight to Dr. Qian's opinion.

## III.
## CONCLUSION

For the reasons discussed above, Plaintiff's motion for summary judgment is denied, and Defendant's cross-motion for summary judgment is granted. The Clerk shall enter judgment accordingly, and close this case.

**IT IS SO ORDERED**.

///

///

– 11 –   16-cv-2265 DMS (KSC)

1  Dated: March 20, 2017

*[signature]*
Hon. Dana M. Sabraw
United States District Judge